DICKERSON v NICHOLS

Docket No. 89814. Submitted December 16, 1986, at Lansing. Decided April 28, 1987.

Calvin R. Dickerson obtained a judgment in the Ingham Circuit Court against Rose Ann Nichols for intentional infliction of emotional distress, Thomas L. Brown, J. Defendant appealed, alleging error in the court's denial of her motions for a directed verdict and for judgment notwithstanding the verdict.

The Court of Appeals *held:*

The standard of review applicable to a denial of a motion for a directed verdict or a motion for judgment notwithstanding the verdict is that review by the Court of Appeals is limited to whether the party opposing the motion offered evidence upon which reasonable minds could differ. The test is whether, viewing the facts in a light most favorable to the nonmoving party, reasonable persons could reach a different conclusion and, if so, the case is property one for the jury. The nonmoving party must be given the benefit of every reasonable inference that can be drawn from the evidence. The court did not err in denying defendant's motions.

Affirmed.

1. APPEAL — DIRECTED VERDICT — JUDGMENT NOTWITHSTANDING THE VERDICT.

The standard of review applicable to a denial of a motion for a directed verdict or a motion for judgment notwithstanding the verdict is that review by the Court of Appeals is limited to whether the party opposing the motion offered evidence upon which reasonable minds could differ; the test is whether, viewing the facts in a light most favorable to the nonmoving party, reasonable persons could reach a different conclusion and, if so,

REFERENCES

Am Jur 2d, Appeal and Error § 886.

Am Jur 2d, Fright, Shock, and Mental Disturbance, §§ 4-8, 17 *et seq.*

Modern status of intentional infliction of mental distress as independent tort; "Outrage". 38 ALR4th 998.

See also the annotations in the Index to Annotations under Direction of Verdict.

the case is properly one for the jury; the nonmoving party must be given the benefits of every reasonable inference that can be drawn from the evidence.

2. TORTS — INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS — PHYSICAL INJURY.

The law recognizes a right to recovery for intentional infliction of emotional distress only where the distress inflicted is so severe that no reasonable man could be expected to endure it; severe emotional distress is normally accompanied by bodily harm, but bodily harm is not required if the enormity of the outrage carries with it the conviction that there has been severe emotional distress.

*Franklin Richard Brussow,* for plaintiff.

*Charles E. Oesterle,* for defendant.

Before: M. J. KELLY, P.J., and SULLIVAN and D. R. CARNOVALE,* JJ

PER CURIAM. Defendant appeals from a jury verdict of $16,500 in plaintiff's favor on plaintiff's intentional infliction of emotional distress claim. Defendant argues that the trial judge erred in denying defendant's motion for a directed verdict and for a judgment notwithstanding the verdict. We disagree and affirm the jury's verdict.

Plaintiff is a maintenance repairman for Michigan State University and was the union steward at the complex where defendant first became employed in August, 1980. Two weeks after defendant started, she complained to plaintiff about problems she was having with two co-workers. Defendant complained about another co-worker one week later. Plaintiff tried to mediate defendant's complaints but found that they were baseless. Defendant, apparently unsatisfied with plaintiff's efforts, repeatedly complained to the union that plaintiff was not adequately representing her. Thereafter,

---

* Circuit judge, sitting on the Court of Appeals by assignment.

the relationship between the parties, already worn, continued to deteriorate. At office staff meetings, defendant accused plaintiff of being untrustworthy and of not adequately representing the employees. She accused plaintiff of being on management's side and of being a "brown-noser" and a "pimp for management." In addition, on repeated occasions, plaintiff heard defendant informing co-workers that plaintiff was having an affair with a co-worker. Other employees began to question plaintiff about defendant's accusations. Moreover, friends did not seem to trust plaintiff any longer and did not come to him with their problems.

After six months of defendant's abuse, plaintiff resigned his position as union steward. Nonetheless, defendant continued to harass him. Plaintiff eventually filed a charge against defendant with the union. In response, defendant began calling plaintiff at home and harassing him, his wife, and his children. When speaking with plaintiff's wife, defendant accused plaintiff of being unfaithful. On one occasion she called the plaintiff's wife just after plaintiff had left for work and asked her whether plaintiff was going to stop at a female co-worker's home for coffee, "as usual." On another occasion she called and informed plaintiff's family that plaintiff was a sneak and a liar and that his wife must be sick to want to live with him. Defendant continued telephoning plaintiff even after he had filed his lawsuit against her and continued right up until the time of trial. There was also evidence that the parties were involved in a physical altercation on one occasion.

Trial testimony indicated that plaintiff's work, his home life and his health suffered as a result of defendant's actions. Both plaintiff's general manager and his immediate supervisor testified that plaintiff was a good employee but that his job

performance declined after defendant became employed. They testified that, after defendant was transferred away, plaintiff's job performance returned to normal. Various co-workers testified that plaintiff's demeanor changed after defendant's arrival in August, 1980. One co-worker testified that plaintiff's behavior changed from one of happiness to depression. Plaintiff's wife testified that after August, 1980, plaintiff, normally an easygoing person, came home depressed after work. He did not want to get up to go to work in the morning. He became irritable, argumentative and withdrawn. Plaintiff's physician prescribed Dimatol for plaintiff's stress-related symptoms of heartburn, headaches and tension. He felt that plaintiff might be developing a peptic ulcer.

Defendant claimed that it was the plaintiff who was harassing her. She accused the plaintiff of threatening and assaulting her and of soliciting sexual relations with her. In response to plaintiff's complaint, she filed a countercomplaint against plaintiff stating claims for assault and battery and for the intentional infliction of emotional distress. Following trial, the jury rendered a verdict of $16,500 in favor of plaintiff, $50 in favor of defendant against plaintiff on her claim for assault and battery, and no cause for action on defendant's claim against plaintiff for the intentional infliction of emotional distress.

On appeal, defendant argues that the trial judge erred in denying her motion for a directed verdict because as a matter of law her conduct towards plaintiff was not so outrageous as to give rise to a claim for the intentional infliction of emotional distress. She also argues that the trial judge erred in dismissing her judgment notwithstanding the verdict motion because plaintiff failed to prove causation or bodily harm.

The standard of review by this Court for a denial of a motion for a directed verdict and a motion for a judgment notwithstanding the verdict is the same. This Court must give the nonmoving party the benefit of every reasonable inference that could be drawn from the evidence. If, in viewing the evidence in a light most favorable to plaintiff, reasonable minds could differ as to whether a plaintiff has met his or her burden of proof, neither a directed verdict nor a judgment notwithstanding the verdict is appropriate and the case should be decided by the jury. *Ford v Blue Cross & Blue Shield of Michigan,* 150 Mich App 462, 464-465; 389 NW2d 114 (1986).

Michigan has defined the tort of intentional infliction of emotional distress as it is described in 1 Restatement Torts, 2d, § 46, pp 71-72:

> One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

*Sawabini v Desenberg,* 143 Mich App 373, 382-383; 372 NW2d 559 (1985); *Ledl v Quik Pik Food Stores, Inc,* 133 Mich App 583, 590-591; 349 NW2d 529 (1984). Comment j of the Restatement states that emotional distress "includes all highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea." It concludes that "[t]he law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it. The intensity and the duration of the distress are factors to be considered in determining its severity. Severe distress must be proved; but in many cases the ex-

treme and outrageous character of the defendant's conduct is in itself important evidence that the distress has existed." Further, comment k states that, while severe emotional distress is normally accompanied by bodily harm, bodily harm is not required if the enormity of the outrage carries with it the conviction that there has been severe emotional distress. 1 Restatement Torts, 2d, § 46, Comments j and k, pp 77-78.

The trial court did not err in denying defendant's separate motions for a directed verdict or for a judgment notwithstanding the verdict. On the basis of defendant's actions, her repeated accusations before plaintiff's coemployees that plaintiff was a management stool pigeon, her claims that he was having an illicit relationship with a coemployee, and her continued harassment of plaintiff and his family, the trial judge properly denied defendant's motion for a directed verdict. The case was properly submitted to the factfinder for its determination as to whether plaintiff had sustained his burden of proof.

Nor is there any merit to defendant's claim that plaintiff failed to establish emotional or bodily harm and failed to causally relate his injuries to defendant's actions. The emotional distress suffered by plaintiff was established by both expert and lay witnesses. Dr. Hill testified that he prescribed Dimotal for plaintiff's stress-related symptoms. He also testified that he felt that plaintiff's symptoms indicated that plaintiff might be developing a peptic ulcer. Plaintiff's wife and three of his co-workers testified that plaintiff's behavior changed after August, 1980: that he became irritable, argumentative and depressed. Further, Dr. Hill's testimony that plaintiff was in an extreme state of agitation when treated on September 14,

1981, immediately following an altercation with defendant, as well as plaintiff's own testimony, established the requisite causal link between defendant's actions and plaintiff's emotional distress.

The jury's verdict is affirmed.