DEITZ v WOMETCO WEST MICHIGAN TV, INC

Docket No. 85102. Submitted August 5, 1986, at Grand Rapids. Decided May 19, 1987.

Calvin F. Deitz brought an action in the Newaygo Circuit Court against Wometco West Michigan TV, Inc., alleging that a ten-part series aired by defendant in its television newscasts depicting plaintiff as the "King of Newaygo" because of his influence over Newaygo County prosecutors, police and judges constituted defamation, invasion of privacy, negligent infliction of emotional distress, intentional infliction of emotional distress, and intentional interference with business relationships. The trial court, Lawrence C. Root, Jr., J., granted summary judgment in favor of defendant, ruling that defendant's statements were opinions and, to the extent they were supported by facts disclosed during the broadcasts, were not actionable. The trial court found that all of the opinions were supported by facts except for the opinion that certain judges had been compromised through gifts, favors and business deals and that the judges had profited from their association with plaintiff. The trial court ruled that plaintiff nonetheless had failed to show that the statements regarding the judges had been made with actual malice, i.e., with knowledge of the statements' falsity or in reckless disregard for their truth or falsity. Plaintiff appealed.

The Court of Appeals *held:*

1. The "fair comment" privilege affords legal immunity for the honest expression of opinion on matters of legitimate public interest when based upon true or privileged statements of fact.

REFERENCES

Am Jur 2d, Libel and Slander §§ 72, 184, 289 *et seq.*

Am Jur 2d, Privacy § 16.

Progeny of New York Times v Sullivan in the Supreme Court. 61 L Ed 2d 975.

Libel and slander: necessity of expert testimony to establish negligence of media defendant in defamation in defamation action by private individual. 37 ALR4th 987.

State constitutional protection of allegedly defamatory statements regarding private individual. 33 ALR4th 212.

Defamation by radio or television. 50 ALR3d 1311.

Thus, the trial court properly ruled that defendant's opinions, with the exception of the opinion regarding the judges, were not defamatory.

2. A private-figure plaintiff in an action for defamation need only show negligence, and not actual malice, on the part of the defendant in order to prevail. In this case, a genuine issue of material fact exists as to whether defendant was negligent in reaching its opinion regarding plaintiff's alleged influence over judges and the trial court should have denied summary judgment with respect to these statements.

3. Summary judgment on plaintiff's claim for false light invasion of privacy should not have been granted since there remains a genuine issue of fact as to whether defendant was negligent in opining that plaintiff holds influence over judges.

4. Summary judgment on plaintiff's claim for negligent infliction of emotional distress was proper, since such a claim may be maintained only where a plaintiff witnesses negligent injury to a third person and suffers mental disturbance as a result.

5. Summary judgment on plaintiff's claim for intentional infliction of emotional distress was proper. The broadcasts in this case were not so outrageous in character and extreme in degree as to go beyond all bounds of decency.

6. The trial court's dismissal of plaintiff's claim for intentional interference with business relationships was made on the basis that plaintiff failed to show that defendant knew of a specific business relationship or expectancy of plaintiff. Plaintiff did not challenge the ruling on this basis. Thus, the trial court's ruling must stand.

Affirmed in part, reversed in part, and remanded.

1. LIBEL AND SLANDER — PRIVATE PERSONS — NEGLIGENCE.
   The standard for determining liability for defamation of a private-figure plaintiff where the speech at issue is of public concern is not malice, but negligence.

2. LIBEL AND SLANDER — OPINION — FAIR COMMENT.
   The principle of "fair comment" affords legal immunity for the honest expression of opinion on matters of legitimate public interest when based upon a true or privileged statement of fact.

3. TORTS — INVASION OF PRIVACY — FALSE LIGHT.
   False light invasion of privacy is publicity which places the plaintiff in a false light in the public eye.

*Parmenter, Forsythe, Rude, Van Epps, Briggs & Fauri* (by *Arthur M. Rude*), for plaintiff.

*Warner, Norcross & Judd* (by *Roger M. Clark* and *J. A Cragwall, Jr.*), for defendant.

Before: Hood, P.J., and D. E. Holbrook, Jr., and W. R. Peterson,* JJ.

Hood, P.J. Plaintiff appeals as of right from a circuit court order granting defendant television station's motion for summary judgment on plaintiff's defamation complaint for libel.

Plaintiff owned a real estate business in Newaygo County consisting of five offices throughout the county and seventy salespersons. On November 3 through 7, and 10 through 14, 1980, defendant broadcast a ten-part series entitled "King of Newaygo," during its newscasts, about plaintiff's alleged influence over Newaygo County prosecutors, police and judges. The series was broadcast by Mark W. Lagerkvist and Jim Riekse. The defendant indicated that the series was the culmination of months of investigation, interviews, and review of documents. When defendant failed to retract the broadcasts after plaintiff's request that it do so, plaintiff initiated the instant suit.

Before the broadcasts were aired, plaintiff assaulted defendant's agents twice when defendant's agents tried to interview him. In one assault, plaintiff was aided by his brother. Both assaults were recorded by defendant. Plaintiff was subsequently convicted of assault and battery in both cases, and spent three days in jail. The assault by plaintiff and his brother was shown eighteen times during defendant's newscasts and thirty-one times for promotional purposes. Plaintiff's attempt to run over defendant's agent was also shown twelve

---

* Circuit judge, sitting on the Court of Appeals by assignment.

times during defendant's newscasts, but was not shown for promotional purposes.

The common allegations of plaintiff's first amended complaint alleged that plaintiff was defamed by the following statements which plaintiff claimed defendant broadcast as facts and not as opinion:

> (a) Deitz, a self-proclaimed millionaire, dominates more than just real estate. During the past decade, Deitz has had a grip on the criminal justice system in Newaygo County.
>
> (b) Judges, prosecutors, and police have been compromised through gifts, favors, and business deals by Mr. Deitz.
>
> (c) The officials profit from Deitz's wealth; he benefits through their power and prestige of office.
>
> (d) Mr. Deitz has spun an uncanny web of influence in Newaygo County through gifts, favors, and deals with local officials.
>
> (e) Why do public officials get involved with Newaygo real estate king, Cal Deitz? In one word, money.
>
> (f) The apparent loser is criminal justice in Newaygo County.
>
> (g) Deitz scoffs at the law.[1]

---

[1] Subsequently, in response to defendant's requests to admit, plaintiff set forth additional facts defendant broadcast as supportive of the seven defamatory statements. The page numbers refer to pages of the transcript of the series:

ALLEGED SUPPORTIVE FALSE STATEMENT I

(Pedersen [sic])

In pages 6 through 14, the telecast charged in effect that Calvin F. Deitz exercised control (grip) over the criminal justice system of Newaygo County by unduly influencing one Donald Pederson, a Lieutenant in the Michigan State Police. No actual influence in any criminal cases were cited but alleged attempts at influence were cited as follows:

(1) Deitz bought and sold Pederson's house in Owosso at no profit and no broker's commission.

(2) Deitz made an interest-free loan to Pederson.

(3) Pederson's testimony at a civil trial under oath for Deitz was a conflict of interest of Deitz.

(4) Pederson's integrity is in question due to activity of Deitz.

(5) An anonymous memo claimed to have appeared on a State Police Bulletin Board was competent evidence against Deitz.

(6) The fact that Pederson accompanied Deitz on trips to Las Vegas is evidence of Deitz' influence over Pedersen's [sic] decisions as a police officer.

(7) Deitz paid for Pedersen's [sic] trips to Las Vegas.

The above statements are false.

ALLEGED SUPPORTIVE FALSE STATEMENT II

(Springstead)

On pages 14 and 15, the telecast charged that Deitz exercised control over the criminal justice system in Newaygo County by unduly influencing the prosecuting attorney, Douglas Springstead (who was part-time prosecutor from 1968 through 1976) by paying for Springstead's vacations in Las Vegas. The telecast also charged that "Springstead admitted that Deitz paid for a number of Las Vegas trips, but he refused to answer any questions about them on camera."

The telecast further charged that Springstead helped Deitz obtain a concealed weapons permit for which, by implication, Deitz was not qualified; also that Springstead refused to prosecute Deitz for hitting a youth due to Deitz' purchased influenced with Springstead.

These charges and implications are false.

The telecast (pp. 17 and 18) further charged that Deitz and Springstead conspired to arrange a sale of the Makowski estate property to Penoyer, Inc. at less than other would have paid for it and cited an offer one year earlier of one Mr. Corsky $18,000 for one-fifth of the property claiming that this was proof of a final depressed sale price.

This charge is false, but even if it were true, it is a non sequitur, i.e. it is no evidence in support of the theme of the telecast which was that Calvin Deitz controlled the criminal justice system of Newaygo County for a decade. The entire Makowski estate episode was deliberately presented by the telecaster to mislead the audience into believing that Deitz controlled the criminal justice system by not paying enough for the Makowski estate property knowing that there was no causal or other relationship between the two.

ALLEGED SUPPORTIVE FALSE STATEMENTS III

(Terrance [sic] Thomas)

Pages 19 through 28 of the telecast charges that Deitz controlled the criminal justice system in Newaygo County for ten years and in support thereof included in the telecast a charge that Prosecuting Attorney Terrance [sic] Thomas (1977-78) owned an interest in a liquor license at the State Hotel and Bar in Newaygo. Apparently the portion of the charge against

In count one of plaintiff's seven-count first amended complaint, plaintiff alleged that he was a private person and that the published matter was

Deitz is that he and Thomas were both stockholders in Penoyer, Inc., which said corporation had an interest in certain real estate and personal property known as the State Hotel and Bar in connection with which there was a liquor license.

Terrence Thomas was a part-time prosecutor in 1977-78.

The charge that Terrence Thomas owned an interest in a liquor license is false. The charge that Deitz bought any influence over Thomas arising out of this hotel transaction is false. The statement that both Thomas and Deitz were stockholders in a corporation which had an indirect interest in a liquor license is true.

The charge in these pages that Terrance [sic] Thomas helped Deitz gain control of a bank in 1972 is false, but, if true, the fact that Terrance [sic] Thomas was a private attorney in 1972 and not a public official makes the inclusion of the statement in context nonprobative of the charge of the telecast, but deliberately misleading.

ALLEGED SUPPORTIVE STATEMENT IV

(Grand Jury)

Pages 29 through 32 claim Deitz unduly influenced the criminal justice system by offering to contribute $2,000 to the cost of a grand jury to investigate the question of who was shooting holes in his real estate signs. This charge concludes that the offer was rejected by the then prosecutor, Keith Schuiteman, who claimed that Deitz had no special influence with him.

This episode is true, but its effect is false in the sense that it was included in the series to mislead the public and present Deitz in a false light.

ALLEGED SUPPORTIVE FALSE STATEMENT V

Page 32 through 35 claim Deitz acquired power and influence over the criminal justice system in his county through questionable means. This statement is false. The supporting statement that much of Deitz's business in Muskegon County in the early 1960's involved property from estates is partly true because he did the best job of selling real estate that was difficult to sell. The implication that Deitz's relationship with Bush was "compromising" is not only false but a nonsequitur of the claim of influence over public officials. The statement that "with wealth, influence, and a ruthless nature, Deitz has become the most feared man in Newaygo County" is false. Ron Kaul's statements are untrue in effect and he was not a reliable source, having been an estranged ex-employee or partner of Deitz with known resentments.

a matter of private concern, made public only because of defendant's broadcast, and thus that the statements were libel per se. In count two, plaintiff alleged that, in the alternative, he was a private person and that the published matter was a matter of public concern, but that defendant lost its qualified privilege through negligence and gross negligence. In count three, plaintiff alleged that, in the alternative, he was a public figure and that the published matter was a matter of public concern, but that defendant lost its qualified privilege by abusing the privilege and failing to meet the qualifications of the privilege by intentional conduct.[2] In counts four through seven, plaintiff alleged invasion of privacy, negligent infliction of emotional distress, intentional infliction of emotional distress, and intentional interference with business relationships.

On September 2, 1983, defendant moved for partial summary judgment under GCR 1963, 117.2(1), now MCR 2.116(C)(8), alleging that most of plaintiff's first amended complaint failed to state a claim upon which relief could be granted because it failed to allege actual malice. On April 6, 1984, the court ruled that plaintiff was a private person, but that the published matter was a matter of public concern, as it concerned the functioning of public officials in their official capacities.[3] The court found that defendant thus had a qualified privilege to publish the material, and that to recover plaintiff had to prove that defendant acted with actual malice, i.e., publishing a statement it knew was false or in reckless disregard for its

---

[2] Subsequently, plaintiff filed a second amended complaint in which he changed the heading of count three to read "Private Person, Matter of Public Concern." This change is not pertinent to the issues on appeal.

[3] Plaintiff did not contest this finding below and does not contest it on appeal.

truth or falsity. This is the constitutional malice standard articulated in *New York Times v Sullivan,* 376 US 254, 280; 84 S Ct 710; 11 L Ed 2d 686 (1964). The court granted defendant's motion as to all counts of plaintiff's complaint except three paragraphs of count three, in which the court felt plaintiff satisfactorily alleged that defendant acted with actual malice. The court found that summary judgment was proper as to count one since the published matter was of public, not private, concern. The court found that as to count two, and the remainder of count three, plaintiff merely alleged negligence. As to the counts for invasion of privacy, negligent infliction of emotional distress, intentional infliction of emotional distress, and intentional interference with business relationships, the court granted summary judgment as to them since the court found these counts to be an attempt to circumvent the actual malice requirement.

On April 24, 1984, defendant filed its second motion for summary judgment, under GCR 1963, 117.2(1) and (3), now MCR 2.116(C)(8) and (10), as to the remaining subparagraphs of count three of plaintiff's complaint. On May 7, 1984, the court partially granted the motion. The court ruled that the seven statements set forth in the common allegations of plaintiff's complaint were opinions, not factual statements, and to the extent supported by disclosed true or privileged statements of facts, were not actionable. The court found all the opinions were supported by disclosed facts in the broadcasts except the opinion that judges had been compromised through gifts, favors, and business deals by plaintiff, and that judges profit from plaintiff's wealth. The court found that as to those two opinions, there was a genuine issue of a material fact as to whether they were made with actual

malice. However, on March 22, 1985, in response to defendant's motion for reconsideration in which defendant submitted additional affidavits, the court found that there was no genuine issue of material fact that defendant did not act with actual malice in broadcasting those opinions. Thus, the court granted defendant's motion for summary judgment in totality, dismissing plaintiff's complaint.

On appeal, plaintiff first argues that, in an action for defamation involving a private person and a matter of public concern, the common-law definition of malice (ill will or spite), and not the constitutional definition of malice (knowledge of falsity or reckless disregard for the truth or falsity) is the applicable standard for determining liability. We need not now consider this issue, however, as the issue has been superseded by the Michigan Supreme Court's decision in *Rouch v Enquirer & News of Battle Creek,* 427 Mich 157; 398 NW2d 245 (1986). In *Rouch,* the Court held that, in a defamation case involving a private plaintiff and a matter of public concern, there is no qualified public-interest privilege whereby the plaintiff must prove actual malice. Rather, the negligence standard adopted in *Gertz v Robert Welch, Inc,* 418 US 323; 94 S Ct 2997; 41 L Ed 2d 789 (1974), applies. *Rouch, supra,* p 187. Thus, in determining whether plaintiff's complaint could survive summary judgment pursuant to GCR 1963, 117.2(1), now MCR 2.116(C)(8), plaintiff's complaint should have been scrutinized to see whether it alleged negligence, not actual malice. Under this scrutiny, count two, rather than count three, would have survived. Count two alleged negligence and gross negligence, while count three alleged intentional conduct; thus, count two should have survived. However, this does not mean that sum-

mary judgment pursuant to GCR 1963, 117.2(3), now MCR 2.116(C)(10), could not have been granted. In *Rouch,* the Court stated that other Michigan common-law privileges, such as the "fair comment" privilege, were not affected by the decision. *Rouch, supra,* p 180, n 13. Thus, if defendant's statements in its broadcasts were "fair comment," summary judgment was still proper.

The fair comment rule is set out in 1 Harper & James, Torts, § 5.28, p 456:

> The principle of "fair comment" affords legal immunity for the honest expression of opinion on matters of legitimate public interest when based upon a true or privileged statement of fact.

3 Restatement Torts, 2d, § 566, p 170 describes the rule thus:

> A defamatory communication may consist of a statement in the form of an opinion, but a statement of this nature is actionable only if it implies the allegation of undisclosed defamatory facts as the basis for the opinion.

The fair comment rule is based on the premise emphasized in *Gertz, supra,* p 340:

> Under the First Amendment there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas.

The trial court in the instant case correctly acknowledged the application of the rule. The court stated:

> So long as opinions and conclusions are published or, in the present case, telecast, along with the facts on which they are based, either at the

same time or in explainable proximity, liability can be imposed only for the statements of underlying fact if they are made with actual malice. So long as there is some nexus between the stated facts and the opinions or conclusions, however strained, there is no liability for the opinions or conclusion. However, if only an opinion or conclusion is stated, without any supporting underlying facts, liability may lie for the statement of the opinion or conclusion itself because of the implication that the speaker knows some underlying facts that support the opinion or conclusion. In such a case, the publisher can be held liable if the opinion or conclusion is made with actual malice since there are no facts stated for the reader, listener or viewer to measure the opinion or conclusion against, . . . and there is no such statement of facts to be separately analyzed for malice.

\* \* \*

For the sake of clarity, the court does hold that the statements attributed to the defendant in paragraph 5 are opinions and conclusions. Therefore, to the extent there is any nexus between them and the defendant's statements of supporting fact in the telecasts, no liability exists on the defendant for their statement and the actual malice analysis must focus on the statements of supporting fact. On the other hand, those opinions and conclusions in paragraph 5 which have no support in or nexus to the statements of supporting fact may, themselves, be actionable if they are stated with actual malice.

Of course, the test is now negligence rather than actual malice. The trial court found that only defendant's opinion that judges have been compromised by plaintiff through gifts, favors, and business deals, and defendant's opinion that judges profit from plaintiff's wealth, were unsupported by broadcast facts. Thus, the court correctly noted that it had to determine whether there was a genuine issue of material fact as to whether those

opinions were made with actual malice.[4] A motion for summary judgment under GCR 1963, 117.2(3), now MCR 2.116(C)(10), is designed to test whether there is factual support for a claim. The court must consider the affidavits, pleadings, depositions, admissions, and documentary evidence. The court will grant summary judgment only if it is satisfied that it is impossible for the claim to be supported at trial because of some deficiency which cannot be overcome. *Rizzo v Kretschmer,* 389 Mich 363, 372; 207 NW2d 316 (1973); *Linebaugh v Berdish,* 144 Mich App 750, 753-754; 376 NW2d 400 (1985). In the instant case, the court found that an analysis of the competing affidavits revealed that there was no genuine issue of material fact that defendant did not broadcast the opinion about judges with actual malice. While we feel the court was correct in concluding that there was no factual issue as to actual malice, we feel that plaintiff's affidavits did raise a genuine issue of material fact as to whether defendant was negligent in making its opinion about judges. In Lagerkvist's affidavit, Lagerkvist stated that he based his opinion on the fact that the 1980 annual report of Penoyer, Inc., a company with which plaintiff was associated, indicated that Newaygo and Oceana Circuit Judge Terrence Thomas continued to be affiliated with Penoyer, Inc., even after he became a judge. However, plaintiff's affidavit states that Lagerkvist knew or should have known that this was untrue, as Lagerkvist had in his possession three deeds from Penoyer, Inc., to Judge Thomas terminating Judge Thomas' interest. Plaintiff's affidavit also alleged that various witnesses interviewed by Lagerkvist were adversaries of plaintiff. In Lag-

---

[4] The court found that there was no genuine issue of material fact that defendant did not broadcast the underlying facts of the other opinions with actual malice.

erkvist's affidavit, he stated that a Newaygo County farmer told him that plaintiff had told the farmer not to worry about possibly stolen farm machinery on his property, as Judge Thomas would keep him out of trouble. In plaintiff's affidavit, plaintiff denied making such a statement to the farmer. The farmer also signed an affidavit denying that he made the statement to Lagerkvist. Lagerkvist's allegations that former Newaygo and Oceana Circuit Judge Van Domelen found in favor of plaintiff in a lawsuit against plaintiff by the State of Michigan in exchange for a transaction in which Van Domelen made a considerable profit on the purchase and resale of stock of the First State Bank of Newaygo was also refuted by plaintiff's affidavit. Lagerkvist's statement in his affidavit that his investigation revealed that plaintiff's nephew had received lenient treatment from former District Judge John P. Riley because Judge Riley was a frequent lunch guest of plaintiff at the Key Club and Riley was authorized to sign plaintiff's name to lunch bills in plaintiff's absence was refuted by plaintiff's statement in his affidavit that the Key Club was not opened until 1976, while plaintiff's nephew's case was before Judge Riley in 1973. In addition, plaintiff submitted affidavits of two other people who refuted items set forth in Lagerkvist's affidavit. The conflicting affidavits indicate that there is a genuine issue of material fact as to whether defendant was negligent in broadcasting its opinion concerning the judges. Indeed, the trial court even stated that the affidavits created an issue of negligence, although not of actual malice. Thus, summary judgment pursuant to GCR 1963, 117.2(3) should not have been granted for those allegations.

We must also determine whether summary disposition pursuant to GCR 1963, 117.2(1) was prop-

erly granted on counts four through seven. The trial court granted summary judgment on the counts alleging invasion of privacy, negligent infliction of emotional distress, and intentional infliction of emotional distress, finding that these counts were attempts by plaintiff to circumvent the actual malice requirement of defamation actions. Since actual malice is no longer required, we must determine whether these counts should have survived summary judgment. A motion under GCR 1963, 117.2(1), now MCR 2.116(C)(8), seeks to test the genuineness of a claim by challenging the legal adequacy of the pleadings. The test is whether plaintiff's claim, on the pleadings, is so clearly unenforceable as a matter of law that no factual development can possibly justify a right to recovery. *Abel v Eli Lilly & Co,* 418 Mich 311, 323; 343 NW2d 164 (1984), reh den 419 Mich 1201 (1984), cert den sub nom *E R Squibb & Sons, Inc v Abel,* 469 US 833; 105 S Ct 123; 83 L Ed 2d 65 (1984). In count four, plaintiff claimed that defendant invaded plaintiff's privacy by excessive publicity which placed plaintiff in a false light before the public. False light invasion of privacy is publicity which places the plaintiff in a false light in the public eye. *Beaumont v Brown,* 401 Mich 80, 95, n 10; 257 NW2d 522 (1977); *Ledl v Quik Pik Food Stores, Inc,* 133 Mich App 583, 591; 349 NW2d 529 (1984). Plaintiff's invasion of privacy count should survive summary judgment, since the series was broadcast to the public, and, if the opinions were negligently made, they could be found to place plaintiff in a false light (i.e., having influence on judges). In count five, plaintiff claimed that defendant negligently inflicted emotional distress upon plaintiff by publication of false statements about plaintiff. The tort of negligent infliction of emotional distress has been found to occur in situa-

tions wherein a plaintiff witnesses negligent injury to a third person and suffers mental disturbance as a result. See *Wargelin v Sisters of Mercy Health Corp,* 149 Mich App 75; 385 NW2d 732 (1986). Thus, it is not applicable to the instant situation, and summary judgment was properly granted on this count.

In count six, plaintiff claimed that defendant intentionally inflicted emotional distress upon plaintiff by publication of false, wild, extreme and outrageous claims. The tort of intentional infliction of emotional distress occurs when one by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another. Liability has been found only where the conduct has been so outrageous in character and extreme in degree as to go beyond all bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community. *Ledsinger v Burmeister,* 114 Mich App 12, 17-18; 318 NW2d 558 (1982). Further, the tort has not been recognized by the Michigan Supreme Court as existing in Michigan. See *Roberts v Auto-Owners Ins Co,* 422 Mich 594, 597, 611; 374 NW2d 905 (1985). Even if the tort does exist, we feel that the broadcast in the instant case does not meet the requirements of being so outrageous in character and extreme in degree as to go beyond all bounds of decency; thus summary judgment was proper as to this count.

In count seven, plaintiff claimed that the statements, accusations, and innuendoes contained in the series interfered with his business. The trial court granted summary judgment on this count because it found plaintiff had not pled the essential requirement that defendant knew of a specific business relationship or expectancy of plaintiff. Since the trial court dismissed this count on a

ground other than the actual malice requirement, and since plaintiff has not appealed on that ground, the dismissal of this count must stand.

Plaintiff also claims on appeal that defendant's excessive publication of the assault and battery scene (eighteen times during its newscasts and thirty-one times for promotional purposes) defeated defendant's qualified privilege. Since there is no longer a qualified privilege in cases of private plaintiffs and matters of public concern, we need not address this issue. Nevertheless, we find this contention to be meritless. In the trial court, plaintiff alleged that defendant's agents provoked the assault, then filmed it to make it look like plaintiff started it. However, plaintiff was convicted of assault and battery even though he raised the defense that defendant's agents provoked him. Thus, collateral estoppel precludes plaintiff from relitigating this issue. Plaintiff's claim that defendant's failure to give him an opportunity to respond to defendant's telecast defeats defendant's qualified privilege also need not be addressed. Nevertheless, this claim is also meritless, since the only question is defendant's state of mind at the time of the publication, not what defendant did afterwards.

In sum, summary disposition pursuant to GCR 1963, 117.2(1) is proper as to counts one, three, five, six, and seven of plaintiff's complaint but not as to count four. As to count two, the only actionable statement was defendant's broadcast opinion that judges have been compromised through gifts, favors, and business deals by plaintiff, and that judges profit from plaintiff's wealth. As to these statements, the conflicting affidavits indicate that there is a genuine issue of material fact as to whether defendant was negligent in broadcasting those statements. If the jury finds that defendant was, plaintiff may recover for invasion of privacy.

Affirmed in part, reversed in part, and re-manded.