GROCHOWALSKI v DETROIT AUTOMOBILE INTER-INSURANCE
EXCHANGE

Docket No. 95575. Submitted May 5, 1988, at Detroit. Decided October
3, 1988. Leave to appeal applied for.

Linda Grochowalski was struck by an automobile in 1975 as she
was crossing a street. One of her more serious injuries was a
nonunion fracture of the tibia in her right leg. Grochowalski
underwent treatment for that injury continuously from the
time of the accident to 1983, and from 1979 to 1983 had
constant infection in her leg. In 1983, Grochowalski contacted
Detroit Automobile Inter-Insurance Exchange, the insurer of
the automobile which struck her and which had paid more
than $100,000 in benefits to Grochowalski since the accident, to
complain about its failure to pay certain benefits. The claims
supervisor she talked to allegedly suggested that she have her
leg amputated so that she could get on with her life. Grochow-
alski filed suit against DAIIE in Wayne Circuit Court alleging
breach of contract, negligence, and intentional infliction of
emotional distress. DAIIE moved for summary disposition as to
the intentional infliction of emotional distress claim. The court,
Helene Nita White, J., granted summary disposition as to that
claim on the ground that the actions alleged did not, as a
matter of law, rise to the level of intentional, outrageous
conduct such as would support a claim for intentional infliction
of emotional distress. Plaintiff appealed.

The Court of Appeals *held:*

1. The trial court apparently granted summary disposition
pursuant to MCR 2.116(C)(10), no genuine issue of material
fact.

2. Viewing the evidence in the light most favorable to plain-
tiff, the comments regarding the possibility of amputation were
not outrageous and, in any event, were not intentionally or
recklessly made for the purpose of causing plaintiff severe

REFERENCES

Am Jur 2d, Fright, Shock, and Mental Disturbance §§ 40, 41.

Am Jur 2d, Summary Judgment §§ 26 *et seq.*

Modern status of intentional infliction of mental distress as inde-
pendent tort; "outrage". 38 ALR4th 998.

emotional distress. While the claims supervisor may have been insensitive in making the remarks, as a matter of law the remarks did not go beyond all possible bounds of decency and should not be regarded as atrocious and utterly intolerable in a civilized community.

*Affirmed.*

MURPHY, J., dissented. He would hold that whether the remarks made by the claims supervisor were outrageous and recklessly made is a question of fact and that summary disposition is not only unjustified but improperly denies plaintiff her day in court where a jury should be allowed to assess the validity of her tort claim. He would reverse and remand for further proceedings.

1. MOTIONS AND ORDERS — SUMMARY DISPOSITION — ISSUES OF MATE-RIAL FACT.

   A motion for summary disposition made on the basis that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law tests the factual support for a claim; in ruling on such a motion, a court must consider not only the pleadings, but also depositions, affidavits, admissions, and other documentary evidence, should be liberal in finding a genuine issue of material fact, and must give the benefit of any reasonable doubt to the nonmoving party; summary disposition is appropriate only if the court is satisfied that it is impossible for the nonmoving party's claim to be supported at trial because of a deficiency which cannot be overcome (MCR 2.116[C][10]).

2. MOTIONS AND ORDERS — SUMMARY DISPOSITION — ISSUES OF MATE-RIAL FACT.

   A party opposing a motion for summary disposition made on the basis that there is no genuine issue of material fact may not rest upon the allegations or denials in his pleadings, but must come forward with evidence to establish the existence of a material factual dispute; if the nonmoving party fails to establish that a material fact is at issue, the motion is properly granted (MCR 2.116 [C][10]).

3. TORTS — INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

   The tort of intentional infliction of emotional distress is comprised of extreme or outrageous conduct which intentionally or recklessly causes extreme distress; extreme distress or outrageous conduct is conduct so outrageous in character and so extreme in degree that it goes beyond all possible bounds of decency and is regarded as atrocious and utterly intolerable in

a civilized community; liability will not be found for mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.

*O'Dea & Jamnik, P.C.* (by *P. Kelly O'Dea*), for plaintiff.

*Brandt, Hanlon, Becker, Lanctot, McCutcheon, Martin & Schoolmaster* (by *Philip R. Blanchard*), and *Gromek, Bendure & Thomas* (by *Nancy L. Bosh*), of Counsel, for defendant.

Before: GILLIS, P.J., and MURPHY and H. R. GAGE,* JJ.

GILLIS, P.J. Plaintiff appeals as of right from the trial court's order granting defendant's motion for partial summary disposition. We affirm.

Defendant moved for summary disposition pursuant to MCR 2.116(C)(8), failure to state a claim upon which relief can be granted, and MCR 2.116(C)(10), no genuine issue of material fact. Although the trial court's order and the hearing transcript are silent as to which provision was utilized in granting defendant's motion, the trial court considered portions of certain depositions in granting defendant's motion. Consequently, we will treat the trial court's ruling as though it was made pursuant to MCR 2.116(C)(10).

A motion for summary disposition under MCR 2.116(C)(10) tests the factual support for a claim. *Morganroth v Whitall,* 161 Mich App 785, 788; 411 NW2d 859 (1987). In ruling on this motion, the trial court must consider not only the pleadings, but also depositions, affidavits, admissions, and other documentary evidence. *Id.* The trial court should be liberal in finding a genuine issue of material fact and must give the benefit of any

---

* Circuit judge, sitting on the Court of Appeals by assignment.

reasonable doubt to the nonmoving party. *Id.* Summary disposition is appropriate only if the court is satisfied that it is impossible for the nonmoving party's claim to be supported at trial because of a deficiency which cannot be overcome. *Id.* We note that a party opposing a motion brought under subrule 10 may not rest upon the allegations or denials of his pleadings, but must come forward with evidence to establish the existence of a material factual dispute. *Id.* See also MCR 2.116(G)(4). If the nonmoving party fails to establish that a material fact is at issue, the motion is properly granted. *Morganroth, supra,* p 789.

Plaintiff was seriously injured in 1975 when an automobile struck her as she was crossing a street at an intersection. One of plaintiff's most serious injuries was a nonunion fracture of the tibia in her right leg. Plaintiff has been hospitalized numerous times, has worn several casts, and has been fighting a constant infection in that area since 1979. Defendant, the insurer of the vehicle which struck plaintiff, has paid benefits to plaintiff in an amount over $100,000.

In the relevant portion of her complaint, plaintiff alleged that she called defendant to complain about its failure to pay certain benefits and was connected with Mr. Cooper, defendant's employee. Mr. Cooper told plaintiff that she "should consider having her leg amputated" and acquiring an artificial leg "so that she could get on with her life." Plaintiff also alleged that when she told Cooper that she would not consider having her leg amputated because "that would be giving up," Cooper told her that she would not be giving up and defendant would be there to help her. Plaintiff further alleged that in order to induce her to amputate her leg, Cooper told her that an artificial leg was not that bad and that he knew so because

his nephew and another female insured had had their legs amputated. Plaintiff alleged that Cooper intentionally made these statements for the purpose of coercing her to have her leg amputated so that defendant would no longer be required to expend large sums on plaintiff's medical treatments for her right leg. Plaintiff further claimed that Cooper's statements were outrageous, went beyond all possible bounds of decency, and were made for the express purpose of causing her severe emotional distress.

In *Roberts v Auto-Owners Ins Co,* 422 Mich 594; 374 NW2d 905 (1985), our Supreme Court declined to decide whether this state should recognize the tort known as intentional infliction of emotional distress, holding that the plaintiffs in that case had failed to present a prima facie case of such a claim. Nonetheless, this Court has recognized such a tort, as has the Sixth Circuit Court of Appeals. *Coogan v City of Wixom,* 820 F2d 170 (CA 6, 1987); *Bhama v Bhama,* 169 Mich App 73; 425 NW2d 733 (1988); *Dickerson v Nichols,* 161 Mich App 103; 409 NW2d 741 (1987); *Margita v Diamond Mortgage Corp,* 159 Mich App 181; 406 NW2d 268 (1987); *Rosenberg v Rosenberg Bros Special Account,* 134 Mich App 342; 351 NW2d 563 (1984); *Ledsinger v Burmeister,* 114 Mich App 12; 318 NW2d 558 (1982); *Frishett v State Farm Mutual Automobile Ins Co,* 3 Mich App 688; 143 NW2d 612 (1966), lv den 378 Mich 733 (1966). All of these cases, including *Roberts,* define the tort of intentional infliction of emotional distress by referring to 1 Restatement Torts, 2d, § 46, pp 71-72. Its elements are: (1) extreme or outrageous conduct, (2) which intentionally or recklessly, (3) causes (4) extreme emotional distress. *Id.* Extreme or outrageous conduct has further been defined as conduct so outrageous in character and so extreme in degree that it goes

beyond all possible bounds of decency and is regarded as atrocious and utterly intolerable in a civilized community. 1 Restatement Torts, 2d, § 46, Comment d, pp 72-73. Moreover, liability will not be found for mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. *Id.* The rough edges of our society still need a good deal of filing down and, in the meantime, plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language and to occasional acts that are definitely inconsiderate and unkind. *Id.* The law will not intervene in every case where a plaintiff's feelings are hurt. *Id.*

In her deposition, plaintiff testified that on December 20, 1983, she attempted to contact Ted Woltjer, the claims agent assigned to her, to determine why an aide she had hired was not being reimbursed by defendant and why certain bills were not being paid. Plaintiff was upset because she had just told her twenty-year-old and nineteen-year-old sons as well as her fourteen-year-old daughter that she was unable to provide anything for Christmas because she had used her money to pay her aide for her services. Plaintiff was recently divorced and received social security benefits in the amount of $338.60 per month. Plaintiff also received aid for dependent children in the amount of $280 per month. Plaintiff had also recently had a bone graft from her hip onto her right tibia to help heal the nonunion fracture. Because Woltjer was unavailable, plaintiff was connected with Cooper, Woltjer's supervisor. Plaintiff asked Cooper why Woltjer was not paying some of her bills or paying her aide, when the doctor required that she have one. Cooper told plaintiff that Woltjer would have to review the claims again and then pay them if necessary.

Thereafter, plaintiff stated that Cooper began

talking about his nephew, who had been in an accident and had had his leg amputated. Cooper stated that his nephew was "well-adjusted" and that he could do things for himself. Cooper then asked plaintiff if she had "ever thought of having it [her leg] off" or if she had ever "considered having it off." Plaintiff told Cooper that she had not thought of having her leg removed because she had been fighting for some period of time to save it. Plaintiff hung up the telephone after Cooper told her that he would have Woltjer return her call. Nonetheless, plaintiff confirmed the remaining allegations in her complaint concerning the conversation.

Cooper's remark made plaintiff realize that she could in fact lose her leg. Plaintiff began pacing up and down on her crutches trying to "figure out what to do." Plaintiff was also upset because her children had heard her side of the conversation and her daughter had accused plaintiff of being a liar because she was not informed that plaintiff's condition might require amputation. Plaintiff was irritated that Cooper told her that he could sympathize with her efforts to save her leg because he had not been through her experiences. Plaintiff claimed that she "tore her house apart." Plaintiff calmed down her daughter and told her sons that she had to leave. Plaintiff borrowed a friend's new car and drove around some back roads drinking. Plaintiff was tired of fighting to get her bills paid and decided to take her pills with the alcohol she was drinking and drive her friend's car off the road. Plaintiff drank a bottle of rum and one-half bottle of whiskey. Plaintiff ended up at another friend's house after doing three 360-degree turns in the car. When that friend attempted to take plaintiff's keys, plaintiff got mad, told him to leave her alone because he could not understand her

problems, and drove to a third friend's home.
There, plaintiff talked for three hours and left.
Plaintiff could not remember going to the last
friend's home or the conversation she had. Plain-
tiff woke up in her bed, but could not remember
how she got there. Plaintiff's children told her that
she came home at 4 A.M. Plaintiff had not had an
episode like this before or since Cooper's state-
ments.

In his deposition, Cooper claimed that he only
spoke to plaintiff during the telephone call. Cooper
made notes during the conversation which stated
that plaintiff was going to have a total knee re-
placement. Cooper asked plaintiff why she was
going to the Detroit area for treatment when she
lived in the Grand Rapids area. Plaintiff responded
that she was going to do everything she could to
save her leg. Cooper told her that he could under-
stand her desire to save her leg. Cooper then
described a situation where a young man had had
a nonunion fracture and had done everything that
plaintiff had done, but that he had had to have his
leg amputated. This man was not Cooper's relative
and had later reported that he felt well because he
was not having continuous infections. Cooper de-
nied suggesting that plaintiff have her leg ampu-
tated.

Viewing the evidence in the light most favorable
to plaintiff, the trial court held that Cooper's
comments regarding the possibility of amputation
were not outrageous and, in any event, were not
made intentionally or recklessly for the purpose of
causing plaintiff severe emotional distress. We
agree. During a conversation with plaintiff con-
cerning her injuries, Cooper related stories about
similar situations where the individuals had opted
for amputation. He then asked plaintiff whether
she had ever considered this procedure. Plaintiff

indicated that she had not and to do so would be giving up. Cooper indicated that plaintiff would not be giving up and that defendant would pay for such procedures. While Cooper's remarks as described by plaintiff were insensitive, we believe that as a matter of law they did not go beyond all possible bounds of decency and should not be regarded as atrocious and utterly intolerable in a civilized community.

Affirmed.

H. R. GAGE, J., concurred.

MURPHY, J. *(dissenting)*. I respectfully dissent because I believe that Cooper's comments asking plaintiff whether she considered having her leg amputated go well beyond being characterized merely as "insensitive." Rather, in the context in which the comments were made, I believe they can be found by reasonable minds to be outrageous and recklessly made. Therefore, summary disposition of plaintiff's claim is not only unjustified by the record developed by plaintiff below, but it improperly denies plaintiff her day in court where a jury should be allowed to assess the validity of her tort claim.

Indeed, in ruling on defendant's motion for summary disposition, the lower court was required to give plaintiff the benefit of *any* reasonable doubt and then determine if the record which might be developed would leave open an issue upon which reasonable minds might differ. Moreover, the court had to be satisfied that it would be impossible for the claim to be supported at trial because of some deficiency which could not be overcome. See *Tidwell v Dasher,* 152 Mich App 379; 393 NW2d 644 (1986). In addition, appellate courts in this state have been liberal in finding that a "genuine issue"

does indeed exist. *Rizzo v Kretschmer,* 389 Mich 363, 372; 207 NW2d 316 (1973); *Linebaugh v Berdish,* 144 Mich App 750, 754; 376 NW2d 400 (1985).

With these standards in mind, I simply cannot agree with the majority that, as a matter of law, no reasonable minds could differ that plaintiff had not yet or would not be able to develop facts to support her claim of intentional infliction of emotional distress.

Although our Supreme Court in *Roberts v Auto-Owners Ins Co,* 422 Mich 594; 374 NW2d 905 (1985), did not formally adopt the tort of intentional infliction of emotional distress into this state's jurisprudence, the Court acknowledged that the tort had gained widespread acceptance, in a variety of factual contexts, in the courts of our sister states.[1] The Court in *Roberts* held that the plaintiff in that case had failed to make out a prima facie claim for relief under the theory of intentional infliction of emotional distress. However, the Court proceeded to identify the four elements comprising a prima facie claim: (1) extreme and outrageous conduct; (2) intent or recklessness; (3) causation; and (4) severe emotional distress. The Court derived these elements from 1 Restatement Torts, 2d, § 46, pp 71-72, which states:

> (1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such

---

[1] In fact, the Michigan Court of Appeals has recognized the tort of intentional infliction of emotional distress and the Sixth Circuit, following Michigan law, has accepted the definition found in 1 Restatement Torts, 2d, § 46, pp 71-72. *Coogan v City of Wixom,* 820 F2d 170 (CA 6, 1987); see *Bhama v Bhama,* 169 Mich App 73; 425 NW2d 733 (1988); *Dickerson v Nichols,* 161 Mich App 103; 409 NW2d 741 (1987); *Margita, supra; Rosenberg v Rosenberg Bros Special Account,* 134 Mich App 342; 351 NW2d 563 (1984); *Ledsinger v Burmeister,* 114 Mich App 12; 318 NW2d 558 (1982); *Frishett v State Farm Mutual Automobile Ins Co,* 3 Mich App 688; 143 NW2d 612 (1966), lv den 378 Mich 733 (1966).

emotional distress, and if bodily harm to the other results from it, for such bodily harm.

In discussing the first element, extreme and outrageous conduct, the *Roberts* Court quoted with agreement the following comment from 1 Restatement Torts, 2d, § 46, Comment d, pp 72-73:

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!" [*Roberts, supra,* p 603.]

See also *Deitz v WOMETCO West Michigan TV, Inc,* 160 Mich App 367, 381; 407 NW2d 649 (1987); *Margita v Diamond Mortgage Corp,* 159 Mich App 181; 406 NW2d 268 (1987), and *Early Detection Center, PC v New York Life Ins Co,* 157 Mich App 618, 625-626; 403 NW2d 830 (1986).

The Restatement also discusses the second element of intent or recklessness:

> The rule stated in this Section applies where the actor desires to inflict severe emotional distress, and also where he knows that such distress is certain, or substantially certain, to result from his conduct. *It applies also where he acts recklessly . . . in deliberate disregard of a high degree of probability that the emotional distress will follow.* [1 Restatement Torts, 2d, § 46, Comment i, p 77. Emphasis added.]

It is unquestioned that the extreme and outrageous character of the challenged conduct may

arise from the abuse of a relationship which puts the defendant in a position of actual or apparent authority over the plaintiff or gives a defendant power to affect a plaintiff's interest. *Margita, supra; Warren v June's Mobile Home Village & Sales Inc,* 66 Mich App 386; 239 NW2d 380 (1976). In fact, a claims adjustor or supervisor who makes decisions regarding insurance benefits to which a claimant may be entitled, including medical care benefits, is in such an authoritative relationship with a claimant.

The record below sufficiently establishes that defendant's agent was in some position of authority over plaintiff. Clearly, defendant's decisions whether to pay plaintiff certain benefits had a strong impact on her day-to-day ability to deal with her leg injury. In addition, Wendall Cooper, as a claims supervisor, is presumably knowledgeable about claim procedures in general and aware of the expenses associated with various types of medical treatments. Moreover, he is most likely cognizant of the emotional and psychological concerns of seriously injured claimants and was apparently familiar with plaintiff's claim file, including her long-term history of costly medical treatment. It is certainly conceivable that defendant would be responsible for fewer and less costly future medical expenses and related benefit expenses had plaintiff's leg been amputated.

The record also clearly shows that plaintiff has endured years of extreme pain and suffering from the numerous operations and the various forms of rehabilitation she has had to undergo in order to save her leg. She has been required to wear casts and braces on her leg and has found it necessary to use both crutches and a wheelchair. She has continuously fought infection at the site of the nonunion fracture and has been required to take a

considerable amount of pain medication. Furthermore, at the time of the telephone conversation with Cooper, defendant had again been dilatory in the payment of benefits due plaintiff and she had been preparing herself both physically and mentally for yet another painful operation to save her leg.

In light of these facts, I believe that reasonable minds might agree that Cooper's comments were. not only outrageous, but that they were made in deliberate disregard of the high degree of probability that emotional distress would follow. Therefore, in my opinion, summary disposition should not have been granted and plaintiff should be allowed her day in court. Accordingly, I would reverse and remand for further proceedings.