[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANT'S MOTION TO STRIKE
The defendant police officers have moved to strike the second count of a complaint filed by the plaintiff who is also a police officer in the Town of Seymour. The second count alleges intentional infliction of emotional distress and makes the following factual claims to support that theory:
 2. The parties are police officers employed by the Town of Seymour.
 3. On or about March 11, 1994, defendant Gittings was involved in an accident, allegedly while returning home from the Brookside Inn Restaurant in Oxford, Connecticut. Defendant Gittings' car allegedly ran off the road.
 4. On or about March 28, 1994, the Seymour Board of Police Commissioners discussed the above incident. CT Page 1739
 5. Between March 28, 1994, and the present defendants have made statements accusing plaintiff of being a `rat' and an `informer' for telling a member of the Board of Police Commissioners about the incident.
 6. On information and belief defendants have at various times held elected positions within the Seymour police union. At various times between March 28, 1994, and the present defendants have spoken at union meetings, and have persuaded others to speak at union meetings, about plaintiff. On information and belief Defendants have on these occasions alleged that plaintiff was and is a `rat' and an `informer.'
 7. The statements of Defendants have come to the attention of the management of the Seymour police department. On information and belief some of the statements were made by Defendants to members of management, and in particular to the Chief of the Department. On information and belief other statements reached members of management through third parties. As a result management has discussed these allegations with Plaintiff.
 8. The conduct of defendants described above was unreasonable and involved an unreasonable risk of causing emotional distress to plaintiff.
 9. Defendants knew or should have known that if they caused such emotional distress, such distress might result in illness or bodily harm to plaintiff. On information and belief defendants acted willfully, wantonly and with malice.
 10. Plaintiff suffered severe emotional distress, with physical consequences, such as disturbed sleep, as a direct and proximate result of the conduct of defendants.
11. Plaintiff has been damaged.
The rules to be applied in deciding a motion to strike are well-known. The facts which are alleged in the complaint must be construed in a way that are most favorable to the plaintiff.Amodio v. Cunningham, 182 Conn. 80, 82 (1980). Since this is a CT Page 1740 fact pleading state and the function of a motion to strike is to enforce the requirements of such a pleading policy, a motion to strike cannot be defeated by facts not set forth in the complaint or by inferences not warranted by the facts actually alleged. The plaintiff has the right to plead over after such a motion is granted so the whole process may in the end be to his or her advantage.
1.
Our state has recognized the tort of intentional inflict of emotional distress. Peytan v. Ellis, 200 Conn. 243, 253 (1986). Its reference to Murray v. Bridgeport Hospital, 40 Conn. Sup. 56,62 (1984) and its discussion at pp. 253-54 indicates that the Restatement (Second) Torts § 46 requirements for the tort have been adopted by cur court. One of the necessary elements of the tort is that the alleged conduct of the defendant must be "extreme and outrageous." Id. p. 253. In footnote 5 on page 254, the court quotes from Prosser Keeton, Torts (5th ed.) § 12, page 60: "The rule which seems to have emerged is that there is liability for conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind." (Emphasis added by court).
The Restatement at § 46, page 73 states: "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his (sic) resentment against the actor and lead him (sic) to exclaim `Outrageous.' The liability clearly does not extend to mere insults, indignities, threats, petty oppressions or other trivialities." This motion to strike claims that the conduct set forth in the second count, as a matter of law, cannot be said to be outrageous. Can the issue raised by a motion to strike of whether conduct alleged in a complaint is extreme or outrageous or the same issue raised pursuant to a motion for summary judgment and relying on affidavits ever be treated as a question of law? The answer to this must be yes and the Restatement seems to think so. In comment k to § 46 it says: CT Page 1741
 It is for the court to determine, in the first instance, whether the defendants' conduct may reasonably be regarded as so extreme and outrageous as to permit recovery or whether it is necessarily so. Where reasonable men (sic) may differ, it is for the jury, subject to the control of the court, to determine whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability.
The necessary implication of the foregoing statement is that where reasonable people cannot differ in concluding the alleged conduct is not extreme or outrageous the court can so determine as a matter of law and can dismiss the case on the pleadings. If carefully read, the early and leading case of Brown v. Ellis,40 Conn. Sup. 165 (1984) makes this very analysis. The defendant filed a motion for summary judgment. The Court denied the motion and did say that the "question of whether an actor's conduct is sufficiently extreme and outrageous to impose liability is one for the jury to decide", id. pp. 167-68, but preliminarily to that the court said that the plaintiff had alleged in his complaint and affidavit that the defendant employer knew of his fear of heights prior to ordering the plaintiff to work at a great height. Being forced to do so caused the plaintiff great emotional injury. The court said that for purposes of summary judgment (just as in a motion to strike as to the allegations of the complaint) these allegations must be accepted as true. The court went on to say "The defendant's conduct, therefore, as alleged by the plaintiff, rises to the level necessary for this cause of action," id. page 167. Thus the court was exactly adopting the Restatement test and deciding as a question of law that in the first instance the conduct alleged met the requirements of the tort. That is, reasonable minds could differ as to whether the conduct alleged was extreme and outrageous. The court went on to say, quoting from comment h that, having made the preliminary determination, it of course was a question of fact for the jury to determine whether given the circumstances of the case the conduct was extreme and outrageous. Therefore, the court held it could not grant the motion for summary judgment filed by the defendant.
The plaintiff cites numerous cases where in ruling on motions to strike or motions for summary judgment directed at this tort lower Connecticut courts have said that whether conduct is CT Page 1742 extreme and outrageous is for the trier of fact. Indeed Murray v.Bridgeport Hospital, supra makes this very statement in denying a motion to strike. But this court must assume that Murray and these other courts in using such language have made the implicit and preliminary decision that reasonable people could differ in deciding whether the conduct was extreme and outrageous given the facts of the case before those courts. Thus Murray cites Moore v.Greene, 431 F.2d 584, 591 (CA 9, 1970), which upheld the trial court's conclusion that a jury verdict should not be reversed on the grounds that as a matter of law the conduct proven was not extreme and outrageous. The appellate court implicitly recognized whether such an allegation was so proven could be a question of law. The court reviewed the evidence and said although it was not overwhelming "we consider that it was sufficient to sustain the jury verdict", id. page 591. Indeed in Peytan v. Ellis itself the Supreme Court upheld the trial court's conclusion that there was no evidence from which the jury could have reasonably found that the defendant's conduct was outrageous. The court concluded then that the trial court properly directed a verdict for the defendant on the intentional infliction of emotional distress count, 200 Conn. at pp 254-55. The trial court obviously made this conclusion as a question of law. At the motion to strike phase the complaint must be given that reading most favorable to the plaintiff, at the summary judgment stage the facts brought to the court's attention by the plaintiff must be accepted, at the conclusion of evidence the plaintiff's evidence must be given the most favorable construction when the defendant moves for judgment — given this common premise how can it be said that a trial court at any one of these stages cannot rule as a matter of law in the appropriate case that reasonable people cannot help but conclude that the action cannot stand? This tort has no special cloak that protects it from the ordinary operations of court practice and procedure.
In fact as the defendants note the recent case of Parsons v.United Technologies Corp., 243 Conn. 66, 67 (1997) in effect recognized the right of a trial court in appropriate circumstances to strike a claim of intentional infliction of emotional distress.
The court recognized the proposition set forth in comment h to the Restatement that in the first instance the trial court must determine whether the defendant's conduct may be reasonably regarded as so extreme and outrageous as to permit recovery under this tort theory. If this test is not met the action can be dismissed. The vehicle to make this determination in our state is CT Page 1743 a motion to strike. Several other courts which recognize the tort of intentional infliction of emotional distress also have concluded that trial courts have the power to dismiss complaints which do not allege sufficient facts to support a claim that the conduct alleged was extreme and outrageous. Pitman v. City ofOakland, 243 Cal.Rptr. 306, 311 (1988). Fudge v. Penthouse InternLtd, 840 F.2d 1012, 1021 (CA, 1988), Frankel v. Warwick Hotel,881 F. Sup. 183, 187 (E.D. Pa., 1995), Whitehead v. Am Intern Inc.,860 F. Sup. 1280, 1290 (N.D. Ill. 1994). One court went so far as to say in speaking of this cause of action: "These matters should be decided on the pleadings because as the supreme court admonished in Knierem v. Izzo (1961) 22 Ill.2d 73, 174 N.E.2d 157, the seminal case permitting this theory of recovery, `[i]ndiscriminate allowance of actions for mental anguish would encourage neurotic overreactions to trivial hurts.'" The court will now proceed to examine the factual allegations of the complaint using the test set out in comment h of Restatement (Second) Torts § 46.
2.
Could reasonable minds differ, given the allegations of the complaint, as to whether the conduct set forth in the complaint was extreme and outrageous? If they could not, then the motion to strike should be granted. If they could, then resolution of this theory of liability should be left to the jury or at least to a motion for summary judgment.
The problem with the comment h test set forth in the Restatement is that it is somewhat subjective. One commentator critical of the Restatement test has said that:
 The term `outrageous' is neither value free or exacting. It does not objectively describe an act or series of acts rather it represents an evaluation of behavior. The concept thus fails to provide guidance either to those whose conduct it purports to regulate, or to those who evaluate that conduct . . . . courts may have no particular wisdom with respect to what is socially intolerable . . . courts cannot simply take refuge in their view of public sentiment when they face issues of outrageousness. First, there may be no community sentiment with respect to a vast number of issues and whatever sentiment there is may be deeply divided with respect to other issues. It would indeed be surprising to learn that the business `community' shared the same views as the `consumer' community with respect to collection practices or that employers and employees agreed about the CT Page 1744 employer's freedom of action to terminate an "at will" employee. Second, there are situations in which it literally does not matter what dominant community sentiment may be — courts are not polling agencies, they are expositors of social policy.
Givelber, The Right to Minimum Social Decency and the Limits ofEvenhandedness: Intentional Infliction of Emotional Distress byOutrageous Conduct, 82 Columbia L. Rev, 42 (1982). This reasoning may be of some interest to an appellate court when first deciding whether to recognize the cause of action in the first place but once the Peytan v. Ellis, supra, bridge has been crossed it is not much help to a trial court. Besides trial courts and appellate courts regularly make decisions similar to the ones necessitated by this tort — pleadings are examined to determine whether a recklessness count will lie as opposed to simple negligence, courts rule on what is "obscene" — judges are supposed to know it when they see it. As the previous discussion indicates the very nature of this tort is such that if it is recognized it must be policed at the pleading stage or pre trial stage by motions to strike or for summary judgment or the courts will be flooded by suits claiming distress for every kind of "threat" "indignity" or "abuse" no matter how trivial. All the cases brought under § 46 of the Restatement (Second) Torts are collected and described in the Appendix to the Restatement and the April 1997 Supplement to the Appendix. Some general principles have been established that are recognized by the courts although in other areas jurisdictions take widely different approaches, some courts hold that it is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to establish the tort of intentional infliction of emotional distress. Cox v. KeystoneCarbon Co. 861 F.2d 390, 395 (CA 3, 1988), Clark v. Township ofFalls, 890 F.2d 611, 623 (CA 3, 1989), other courts appear to take a more liberal view, see Rinehimmer v. Luzerne County CommunityCollege, 539 A.2d 1298, 1305 (Pa. 1988) and other courts seem to hold that a person's status as an employee affords him or her greater protection from insult and outrage than if she or he were a stranger to employer defendants, see discussion at Blong v.Snyder, 361 N.W.2d 312, 316 (Ia., 1984), cf. also Solitari v.Smith, 812 F. Sup. 1280, 1284-87, 1296 (D.NH, 1993) interpreting New Hampshire law and holding that deliberate long term harassment enough to establish outrageous conduct — plaintiff was given written warnings and required to keep time records not required of anyone else, but see Whitehead v. A MIntern, Inc., 880 F. Sup. 1280, 1285, 1290 (ND.Ill. 1994), which takes a different and more conservative approach, cf. also Douhan
CT Page 1745Bigfork School District No. 38, 805 P.2d 1354, 1362-66 (Mont., 1991), Cox v. Keystone Carbon Co., 801 F. Sup. 390, 394-97 (CA3, 1988).
The courts appear to agree that mere insults or verbal taunts do not rise to the level of extreme and outrageous conduct even when they include obnoxious activity like threats, insults or taunts McNeal v. City of Easton 598 A.2d 638, 641 (Pa. 1991) (plaintiff target of harassment and ridicule by co-workers) cfMiller v. Equitable Life Assurance Soc., 537 N.E.2d 887, 889 (Ill. 1989). Not even the more despicable activity of racial or ethnic slurs have been found to be outrageous for purposes of this tort at least when they have not been made in the presence of the plaintiff but in a more cowardly fashion behind his or her back,Bouie v. Autozone, 959 F.2d 875, 877 (CA 10, 1992).
Something more than mere verbal taunts are required. Thus inBrown v. Town of Allenstown, 648 F. Sup. 831, 839 (D.N.H., 1986) a judge refused to overturn a verdict in favor of a former part-time police officer under this tort where the jury could find a fellow officer intentionally harassed her by following her while she was on duty and placing her under surveillance to such an extent that it impeded her performance and forced her to resign. In Dickerson v. Nichols 409 N.W.2d 741 (Mich. 1987) an action for intentional infliction of emotional distress was successfully brought by one employee against a fellow employee. The verdict in the plaintiff's favor was upheld on appeal. The court noted that the defendant repeatedly told co-employees that the plaintiff was a management stool pigeon but also claimed he was having an illicit relationship with another worker. Other employees questioned the plaintiff about these matters, friends no longer trusted him. After the plaintiff resigned his position as union steward the defendant called the plaintiff at home harassing his wife and children calling him a sneak and a liar and suggesting to his wife that he was stopping at a female co-worker's house for coffee "as usual" before coming home, id. 742-48.
Similarly the cases distinguish between situations where a person merely accuses another of fraudulent or dishonest activity as opposed to actively encouraging or trying to bring about a false prosecution. In People v. Guthrie, 404 S.E.2d 442, 443 (Ga., 1991), the court held outrageous and extreme conduct had not been shown where the defendant supervisor made false accusations of dishonesty and lack of integrity against an employee which the supervisor honestly but mistakenly believed to be true. In Peytan
CT Page 1746v. Ellis, supra, at 200 Conn. 254, the court upheld the trial court's conclusion that the jury had erred in finding outrageous conduct where the defendant merely made allegations of fraud and lying against the plaintiff to the employment security division of the state labor department, id. page 245.
On the other hand a court had no difficulty in finding the requisite outrageous and extreme conduct had been established by the evidence and refused to reverse the trial court's failure to overturn a plaintiff's verdict where the jury could have found that a supervisor had planted checks on the plaintiff in order to implicate her in a theft, Dean v. Ford Motor Credit Co.,885 F.2d 300, 306-307 (CA5, 1989). In Norman v. General Motors Corp. 628 F. Sup. 702, 204 (D.Nev 1986) the jury could have reasonably found that the defendant employer "set up an employee of twelve years to attempt to implicate him on drug charges," id. p. 704 — that really is outrageous. In Mroz v. Lee, 5 F.3d 1016, 1017, 1020
(CA6, 1993), the court overturned the dismissal of a complaint made on this theory of liability where among other things a former business associate was alleged to have actually filed false criminal charges against the plaintiff, used his "political influence" to ensure the plaintiff was bound over for the trial on the false charges and encouraged the prosecution by various means including taking the investigating authorities fishing.[1]
But apart from evaluating specific types of activity and examining particular factual circumstances the courts have concerned themselves with broader questions and policy considerations when deciding whether certain alleged conduct is extreme and outrageous. Thus Prosser notes the social context in which the alleged activity took place is an important factor for the courts. One court has said: "The outrageous and extreme nature of the conduct to be examined should not be considered in a sterile setting detached from the milieu in which it took place," Eddy v. Brown, 715 P.2d 74, 77 (Okla, 1986). Thus inDickerson v. International U.A.W. Union et al, 648 N.E.2d 40 (Oh., 1994) the appellate court reversed a judgment in the plaintiff's favor for intentional infliction of emotional distress and concluded that extreme and outrageous behavior were not shown where a plaintiff who crossed a picket line was threatened with physical harm and called a "scab" on several occasions. The court reasoned that this was no more than robust language and a clash of strong personalities which did not attain the level of outrageous conduct in a labor strife context so as to support a CT Page 1747 claim of intentional infliction of emotional distress, id. page 47. The court noted no direct evidence linked the union to the property damage and harassing phone calls that occurred, id. pp. 46-47, cf. Batson v. Shifflet 602 A.2d 1191, 1217 (Md., 1992).
Another aspect of the context in which complained of activity has occurred is referred to in Margarita v. Diamond MortgageCorp., 406 N.W.2d 268, 272 (Mich. 1987) where the court said:
 The extreme and outrageous character of the conduct may arise from the position of the actor or a relationship to the distressed party . . . . For example, it may occur through an abuse of a relationship which puts the defendant in a position of actual or apparent authority over a plaintiff or gives a defendant power to affect a plaintiff's interest.
Also see Batson v. Shifflet, supra at 602 A.2d page 1217, cf. commend (d) of § 46 of Restatement (Second) Torts which indicates extreme outrage need not be shown for insults where there is a "special relationship" between the parties, referring to § 48.
In Margarita the defendant's business involved lending money for mortgages. The court upheld the trial court's refusal to grant the defendant's motion for summary judgment where the debt the defendant company sought to collect was not and never had been overdue. Despite this the plaintiff was harassed through abusive phone calls and letters assessing late charges. Foreclosure was threatened on various occasions. The court noted that the defendant company had a great deal of power to affect plaintiff's credit rating and future ability to borrow funds and had engaged in continuous harassment for nearly two years on false claim of non payment his to the court was clearly a case for the jury.
With these general principles in mind, the court will examine the allegations of this complaint to determine whether given the allegations and the fair inferences that could be drawn from them reasonable people could differ on whether the conduct alleged was extreme and outrageous. The court concludes that as a matter of law the allegations of the second count of the complaint do not set forth sufficiently outrageous and extreme conduct or to put it another way, reasonable people could not differ over whether the conduct was outrageous so that on the basis or the CT Page 1748 allegations made the issue of extreme and outrageous conduct should not properly be an issue for a jury.
When closely examined what does the second count of the complaint allege? It states that on a certain date almost four years ago police officer Gittings was involved in an accident and his car "allegedly" ran off the road while he was returning home from a restaurant. There is no allegation nor can the court go beyond inference and speculate that the accident resulted from any violation of motor vehicle or criminal laws. The plaintiff, also a police officer, told a member of the Board of Police Commissioners about this incident. It is then alleged that since March 1994 Gittings and the defendant Cook who is also a police officer at "various times" called the plaintiff a "rat" and an "informer", the defendants are said to have held various positions at various times within the union. Nowhere are these positions defined, nowhere are the dates when such positions were held in relation to the March 1994 date described. It is not indicated that the plaintiff is in the union or that he was present when these remarks were made. The defendants are said to have encouraged "others" to speak at union meetings about plaintiff "when the defendants called him a rat" and an "informer". It is not specifically indicated what these "others" might have said and how many people are being referred to in relation to all those who attended particular meetings.
These accusations have allegedly gotten through to management from the defendants and unidentified parties and as a result "management has discussed these allegations with plaintiff."
First from the perspective of management and its discussion of these "allegations" with the plaintiff: the plaintiff is not being accused of criminal, unethical or even improper conduct.
There is no allegation that as a result of these discussions the plaintiff's job assignments were worsened or his work conditions deteriorated or that he was even criticized by management. The plaintiff merely is alleged to have relayed information to a police board member that is arguably within the scope of any member's interest. The defendants characterized him as a "rat" and "informer" for doing so. How can the court infer on the basis of these bare boned allegations that management shared these characterizations by merely discussing the matter with the defendant let alone adopted a course of action unfavorable or prejudicial to the plaintiff. CT Page 1749
Secondly as regards the union meeting activity of the defendants: there is no allegation of anything more than taunts or insulting remarks. It is true as the plaintiff asserts that it is important for an officer to keep trusting and good relations with other officers. The officer relies on them for backup and support in dangerous situations and his safety could depend on receiving that support. But despite the passage of four years there is no allegation that the plaintiff's safety or ability to do his job have in any way been affected by what appears after all to be loud mouthed, unfair, union hall tainting. As noted there is not any indication the plaintiff was even present when these taunts were made.
Also broad argument is made that the defendants' conduct in the union setting because of their undefined positions "gave them actual or apparent power to affect plaintiff's interests, including his job", (page 14, plaintiff's brief) — how so and when, for how long? There is no allegation in the complaint that the union has taken any steps qua union or that the defendants as union officials took any action adverse to the plaintiff. Nor is there even any allegation that the plaintiff feared any such steps would or even could be taken even if the crude but limited cat-calling that went on here could have reasonably raised such fears which the court finds it difficult to conclude in any event. In Margarita v. Diamond Mortgage Corporation, supra, the defendant had the apparent power to threaten the plaintiff's credit rating. But there the defendant went beyond mere demand letters on what was a fraudulent claim of money owing. Harassing calls were made, letters asserting late charges were sent, foreclosure was threatened. Here, as noted, there is no indication the offensive language was even said in the plaintiff's presence and there is no allegation that specific acts that would be harmful to the plaintiff were suggested by the defendants to other officers or management let alone communicated to the plaintiff.
In certain respects this case is similar to Thomas v.Douglas, 877 F.2d 1428 (CA9, 1989). There a law enforcement officer acted as whistle-blower in telling the Internal Affairs Division of activity of two deputy sheriff candidates which he suspected violated department rules and where criminal. The plaintiff requested a transfer but the defendant sheriff denied it. In one count he sued the sheriff and the county and claimed the trial count erred in dismissing his claim of intentional CT Page 1750 distress because here was a genuine issue of material fact as to whether the defendants' conduct was extreme and outrageous. The appellate court upheld the trial court. It noted that there was no evidence his supervising sheriff or the county acted to punish or retaliate against the plaintiff. It was relayed to him that another officer had said he wished he had known who had complained to Internal Affairs because "his (posterior) is grass" (the reader can complete the rhyme). The court held infliction of emotional distress does not apply to "mere" threats because "some safety valve must be left through which irascible tempers may blow off relative y harmless steam" (quoting from Restatement at § 46 comment (d)), id. page 1435.
From the allegations of this complaint that is all that was involved here — "harmless steam." The motion to strike is granted.[2]
CORRADINO, J.