*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

WILLIAM JOSEPH BEUMEL,

        Plaintiff-Appellee,

v

KKC ENTERTAINMENT, INC., doing business as
HAYLOFT SALOON DETROIT,

        Defendant-Appellant,

and

ERIK MATTHEW,

        Defendant.

UNPUBLISHED
June 20, 2025
11:22 AM

No. 368929
Wayne Circuit Court
LC No. 22-003998-NO

Before: GADOLA, C.J., and MURRAY and REDFORD, JJ.

PER CURIAM.

In this interlocutory appeal, defendant, KKC Entertainment Inc ("KKC"), doing business as Hayloft Saloon Detroit, appeals by leave granted[1] the order granting in part and denying in part summary disposition under MCR 2.116(C)(10) (no genuine issue of material fact) in favor of defendant.[2]  On appeal, defendant argues that plaintiff failed to present evidence that it was vicariously liable for the tortious conduct of one of its employees toward plaintiff and that plaintiff failed to present sufficient evidence for a claim of intentional infliction of emotional distress

---

[1] *Beumel v KKC Entertainment, Inc*, unpublished order of the Court of Appeals, entered April 29, 2024 (Docket No. 368929).

[2] Only the portion of the trial court's order denying defendant's motion for summary disposition is at issue in this appeal.

(IIED). We disagree and affirm the trial court's order affirming in part and denying in part summary disposition.

## I. BACKGROUND

This appeal stems from a battery committed by KKC employee, Erik Matthew,[3] against plaintiff, William Beumel, in the parking lot of Hayloft Saloon in Detroit, Michigan. Starting in 2018, Matthew was hired to work as a parking lot attendant for the bar. His primary duties consisted of assisting patrons entering and exiting the bar's small parking lot. In addition, when called upon by the bartenders, Matthew's duties included removing patrons from the bar. Matthew was hired on the recommendation of a friend of KKC's owner, Patrick Carolan. Carolan did not provide Matthew with formal training, but told him to use "common sense" when ejecting unruly patrons from the bar.

Plaintiff alleged that on January 15, 2022, he got into an argument with other patrons at the bar and was asked to leave by a bartender. While plaintiff complied with this request, Matthew was called inside to remove plaintiff. Surveillance video footage showed plaintiff walking through the exit of Hayloft Saloon when he was shoved from behind. Matthew and a customer were following him. Plaintiff turned around and raised his arm apparently to strike the person that pushed him. Plaintiff continued to walk backward to his vehicle. Plaintiff turned around and walked approximately three more steps toward his vehicle when Matthew kicked his legs. Plaintiff turned back around and was punched in the head by Matthew, causing him to fall down. Matthew continued to punch plaintiff in the head and kick him for approximately 20 seconds. Plaintiff attempted to roll away and get up several times. After an unidentified man came over and separated the men, plaintiff retreated to his car and left. Plaintiff's family reported the incident to the police and informed Carolan of the assault. After reviewing the video footage, Carolan fired Matthew.

Plaintiff filed an amended complaint against KKC and Matthew alleging (1) assault as to all defendants; (2) battery as to all defendants; (3) negligence as to all defendants; (4) negligence per se as to all defendants; (5) negligent hiring, supervision, and retention as to KKC; (6) civil conspiracy as to all defendants; and (7) IIED as to all defendants. Plaintiff alleged KKC was vicariously liable for Matthew's conduct and directly liable for negligently hiring, supervising, and retaining him. KKC filed an answer. A default was entered against Matthew, who failed to file an answer or make an appearance.

Defendant moved for summary disposition under MCR 2.116(C)(8) and (C)(10), arguing that plaintiff's claims should be dismissed.[4] Defendant argued, in relevant part, it was not directly or vicariously liable for Matthew's conduct because Matthew's conduct of attacking an already-ejected patron was outside the scope of his employment and unforeseeable. Defendant likewise

---

[3] Matthew has not filed an appearance in this Court. Accordingly, any reference to defendant in this appeal refers only to KKC Entertainment Inc.

[4] KKC conceded for purposes of its motion for summary disposition that Matthew was its employee.

argued that plaintiff failed to establish a genuine issue of fact regarding his IIED claim because he did not suffer severe emotional distress. Plaintiff responded to the motion, arguing a genuine issue of fact existed regarding vicarious liability because Matthew, who was authorized to use force to remove patrons, was acting within the scope of his employment when he attacked plaintiff. Plaintiff also argued Matthew's conduct was foreseeable because a customer and bartenders knew that Matthew had a history of using excessive force to remove patrons that KKC should have known about.

After a hearing on the motion for summary disposition, the trial court granted the motion in part on plaintiff's claims of negligence, negligence per se, and civil conspiracy. The trial court denied the motion in part on plaintiff's claims of assault; battery; negligent hiring, supervision, and retention; and IIED. The trial court concluded that the evidence presented questions of fact. Thereafter, the trial court entered an order granting in part and denying in part the motion for summary disposition. This appeal followed.

## II. STANDARD OF REVIEW

This Court reviews de novo a trial court's decision on a motion for summary disposition. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). A motion under MCR 2.116(C)(10) "tests the factual sufficiency of a claim." *Id*. 160 (emphasis omitted). When considering a motion under MCR 2.116(C)(10), the trial court "must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion." *Id*. A court must consider the pleadings, affidavits, depositions, admissions, and any other documentary evidence submitted by the parties. MCR 2.116(G)(5); *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *El-Khalil*, 504 Mich at 160 (quotation marks and citation omitted).

## III. VICARIOUS LIABILITY

Defendant argues the trial court erred by denying its motion for summary disposition on plaintiff's vicarious liability claims. Specifically, defendant argues there was no question of fact that Matthew acted outside the scope of his employment when he attacked an already-ejected customer and it was unforeseeable that Matthew would mount such an attack against plaintiff. We disagree.

In *Hamed v Wayne Co*, 490 Mich 1; 803 NW2d 237 (2011), our Supreme Court identified two ways in which an employer may be held vicariously liable for the torts of its employee: (1) when the conduct of the employee falls within the scope of employment, *id*. at 11; or (2) when the conduct falls outside the scope of employment, but is nonetheless foreseeable, *id*. at 12. Addressing each in turn, we conclude plaintiff established a genuine issue of material fact regarding vicarious liability.

## A. SCOPE OF EMPLOYMENT

Under the doctrine of respondeat superior, "[a]n employer is generally liable for the torts its employees commit within the scope of their employment" and "not liable for the torts . . .

committed by an employee when those torts are beyond the scope of the employer's business." *Id*. at 10-11 (quotation marks and citation omitted). An employee acts "within the scope of employment" when he is "engaged in the service of his master, or while about his master's business." *Id*. at 11 (quotation marks and citation omitted). Even when an employee acts "contrary to an employer's instructions, liability will nonetheless attach if the employee accomplished the act in furtherance, or the interest, of the employer's business." *Id*. However, an employee's conduct does not fall within the scope of employment when he engages in "[i]ndependent action, intended solely to further the employee's individual interests." *Id*., quoting 2 Restatement Agency, 3d, § 7.07, p 201.[5]

Accordingly, the question is, at the time of the conduct, whether the employee had the employer's business in mind. See *Cook v Mich Central R*, 189 Mich 456, 459-460; 155 NW 541 (1915). Generally, the issue of whether an employee was acting within the scope of his employment is a question for the trier of fact. *Mueller v Brannigan Bros Restaurants & Taverns, LLC*, 323 Mich App 566, 572; 918 NW2d 545 (2018). However, the issue may be decided as a matter of law when it is clear that the employee was acting to accomplish some purpose of his own. *Id*.

Historically, our Courts have observed that an employer can reasonably anticipate that an employee "may commit minor crimes in the prosecution of the business," but more serious crimes are usually outside the scope of employment. *Bryant v Brannen*, 180 Mich App 87, 100-101; 446 NW2d 847 (1989) (holding an employer was not liable for a building manager who shot a resident in his own apartment and outside of business hours). Consistent with this idea, "Michigan cases have imposed liability on employers whose servants committed simple batteries while repossessing property, collecting money from a patron, or ejecting a patron from a bar." *Id*. at 102 (collecting cases). An exception to the idea that serious crimes cannot be expected is when an employee commits a crime involving excessive force when his duties include displaying elevated force, such as when an employee is authorized by his employer to carry a weapon. Compare *Cook*, 189 Mich at 460-462 (explaining a question of fact existed whether a homicide was within the scope of employment when a nightguard who was authorized to carry a gun shot and killed suspected trespassers), with *Martin v Jones*, 302 Mich 355, 357-358; 4 NW2d 686 (1942) (concluding as a matter of law an employer was not vicariously liable for a gas station manager shooting a patron when the manager's duties did not include carrying a firearm).

---

[5] We disagree with plaintiff's assertion that defendant waived this issue by failing to cite to the Restatement on agency law in its appellate brief. This Court has previously relied on Restatements of Law to assess whether an employee acted to further his employer's interests. See *Bryant*, 180 Mich App at 99, quoting 1 Restatement Agency, 2d, § 229, p 506. However, defendant relies on relevant and current caselaw to make its argument. Its failure to expressly cite the Restatement does not impede this Court's review of the issue. See *King v Oakland Co Prosecutor*, 303 Mich App 222, 236; 842 NW2d 403 ("This Court will not search for authority to sustain or reject a party's position. The failure to cite sufficient authority results in the abandonment of an issue on appeal.") (quotation marks and citation omitted).

Although the nature of the tort or crime is relevant, the central inquiry remains whether the conduct was rendered in furtherance of the employer's business. In the context of employees who are responsible for securing their employer's premises: "It is also the rule that if the servant uses more force than he was authorized to use in evicting a party from his master's premises, the master is liable." *Stewart v Napuche*, 334 Mich 76, 79; 53 NW2d 676 (1952); see also *Cook*, 189 Mich at 462. For example, in *Stewart*, 334 Mich at 78-81, the Supreme Court concluded an employer bar was vicariously liable for injuries an unruly patron sustained from a bartender striking and holding the patron in a wrestling grip after refusing to serve the patron another beer. The evidence presented supported that the employee acted in furtherance of his employer's business because his goal in striking the patron and placing him in the wrestling grip was to subdue him to more easily eject him from the establishment. *Id*. at 81. In contrast, in *Mueller*, 323 Mich App at 569, 574, the employer bar was not vicariously liable for a bouncer who chased an already-ejected patron down the street off of the bar premises and beat the patron causing his death. This Court explained chasing an already-ejected patron down the street was not similar to an authorized act and could not be said to benefit the employer. *Id*. at 574.

Considering the evidence in a light most favorable to plaintiff, there was a genuine issue of material fact whether Matthew acted within the scope of his employment when he attacked plaintiff. Although Carolan asserted that Matthew was a parking lot attendant and not a bouncer, Carolan also testified that Matthew's job entailed removing customers from the premises and using physical force to do so when necessary. Carolan explained that Matthew was trained to use "common sense" when removing patrons from the establishment. Accordingly, Matthew's job included the authority to use reasonable force to eject patrons from the bar.

The evidence supports that the interaction between plaintiff and Matthew began within the scope of Matthew's employment because he was tasked with removing plaintiff from the bar. The day of the assault, Matthew was working in his capacity as a parking lot attendant. He was called into the bar by the bartenders to remove plaintiff because he was being loud and obnoxious and would not leave.

A question of fact remains whether the subsequent battery rendered as plaintiff attempted to leave was done to further his employer's or his own personal interest. Plaintiff testified that he was picking up his things and getting ready to leave on his own when he saw Matthew approach him. Plaintiff walked toward the exit and was shoved from behind through the doorway. The video footage of the incident showed plaintiff spin around and raise his hand toward Matthew. Plaintiff testified that he put his finger in Matthew's face; however, the video footage suggests that he raised his hand to strike Matthew. Plaintiff proceeded to walk backward several paces toward his vehicle before turning away. Matthew followed him, tripped him, and proceeded to punch and kick him, while plaintiff attempted to escape. Plaintiff was only able to stand up and leave after others intervened.

This evidence, particularly the video footage showing plaintiff spinning around and raising his hand at Matthew, could suggest that Matthew's attack was motivated by personal reasons such as anger at plaintiff or a bruised ego. Moreover, the video footage bears some similarities to *Mueller*, 323 Mich App at 569, 574, in which the bouncer chased an already-ejected patron down the street and beat him. However, the same evidence could support that Matthew shoved plaintiff and followed him into the parking lot to repeatedly hit him in the overzealous performance of his

duty to eject patrons from the bar. Likewise, this case is distinct from *Mueller* because plaintiff was still on the premises when he was attacked by Matthew. When reviewing a trial court's decision on a motion for summary disposition, this Court is required to view the evidence in a light most favorable to plaintiff as the nonmoving party. See *El-Khalil*, 504 Mich at 160. As such, Matthew's motive in attacking plaintiff remains a question of fact for the jury to decide.

Moreover, the severity of the battery is relevant, but not dispositive. *Stewart*, 334 Mich at 79; see also *Cook*, 189 Mich at 462. Review of the video footage suggests that Matthew's conduct was not limited to a simple battery. See MCL 750.81; *People v Cameron*, 291 Mich App 599, 614; 806 NW2d 371 (2011) (defining battery as an "intentional, unconsented and harmful or offensive touching of the person of another, or of something closely connected with the person") (quotation marks and citation omitted). Matthew attacked plaintiff from behind and repeatedly punched him in the head and kicked him as he tried to roll away, conduct indicative of an intent to cause serious injury. It remains a question for the jury whether the severity of the attack counsels that Matthew was acting outside the scope of his authority to use force to eject patrons. See *Bryant*, 180 Mich App at 100-101. Accordingly, we conclude a question of fact remained whether Matthew's acts were rendered within the scope of his employment.

## B. FORESEEABILITY

The second way in which an employer may be held vicariously liable for the torts of its employee is when the conduct falls outside the scope of employment, but is nonetheless foreseeable. *Hamed*, 490 Mich at 12. The foreseeability of an employee's conduct is a two-pronged inquiry whether (1) the employer had knowledge of or reasonably should have known of the employee's prior similar conduct and (2) the employer had knowledge of or reasonably should have known of the employee's propensity to act in accordance with that prior conduct. See *id*. Under this inquiry, "the conduct at issue may be so close in time to prior similar conduct that knowledge under the first prong gives rise to a valid inference that the conduct was foreseeable under the second prong." *Id*. However, "if an employee's actions were temporally distant and the employee's recent record suggested a change in character, foreseeability would not be established." *Id*. The Supreme Court has consistently held that an employer's liability for the criminal acts of its employees is limited to those it can reasonably foresee because "we should not expect employers to assume that their employees will disobey the law." *Id*. at 13. Liability under this inquiry remains a question of foreseeability, rather than one of "avoidability" in hindsight. *Id*. at 14.

KKC first asserts that the evidence plaintiff relied upon in opposition to its motion for summary disposition could not be considered by the trial court because it was inadmissible hearsay. In order to be considered for purposes of summary disposition under MCR 2.116(C)(10), the evidence must be substantively admissible but need not be admissible in form. MCR 2.116(G)(6); *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 373; 775 NW2d 618 (2009). Consequently, the party relying on the evidence does not have to lay a foundation for admission of the evidence in order for the trial court to consider it on a motion for summary disposition "as long as there was a plausible basis" for admission of the evidence. *Id*.; see also MCR 2.116(G)(6).

Plaintiff relied on his own deposition testimony that another patron of the bar, Lawrence Knight, told him that Matthew assaulted him in the past and that several bartenders told Knight that Matthew had a reputation for using more force than necessary when ejecting patrons. Plaintiff also testified that three different bartenders spoke to plaintiff about Matthew's use of force while Matthew worked at Hayloft, including at least one bartender who reported Matthew used more force than necessary.

At trial, plaintiff would not be able to rely on his testimony about what Knight told him because those statements would be hearsay. " 'Hearsay' is a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." See MRE 801(c).[6] Hearsay is inadmissible unless an exception applies. MRE 802. Plaintiff's own statements recalling what Knight allegedly told him regarding Matthew's reputation for using force would be hearsay because they would likely be offered to prove the truth of the matter asserted, i.e., that Matthew had a history of violence. We are unaware of a basis for the substantive admission of plaintiff's testimony as to what Knight told him at trial.[7]

However, the bartenders' alleged statements made to plaintiff are plausibly admissible as an admission by a party opponent under MRE 801(d)(2)(D) (stating "a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship" is not hearsay). As such, the trial court could rely on plaintiff's testimony of the bartenders' statements to reach its decision at the motion stage.

Regardless of the substantive admissibility of Knight's and the bartenders' statements, only the bartenders' statements support the existence of a genuine issue of material fact whether defendant had actual or constructive knowledge of Matthew engaging in prior acts of violence or a propensity to act in accordance with such conduct. See *Hamed*, 490 Mich at 12. Plaintiff first relied on Knight's alleged statement that Matthew assaulted him. Plaintiff did not know when this assault occurred and did not know the specific details of the assault, but knew that Knight did not report it to the police. Plaintiff did not state that the bartenders or management were aware of Knight's allegations. This was a vague third-party allegation that did not detail the context or extent of force Matthew allegedly used against Knight. It did not support that Matthew had a history of assaulting patrons in the manner he attacked plaintiff. Moreover, the statement of a third-party patron did not support that KKC or its management knew anything about the incident.

Plaintiff also testified he was told by bartenders that Matthew had a reputation for being "good . . . at removing people from the bar," that "he used more force than necessary," and "he would be . . . physical and rough somebody up." However, none of the bartenders cited specific

---

[6] The Michigan Rules of Evidence were substantially amended on September 20, 2023, effective January 1, 2024. See 512 Mich lxiii (2023). We rely on the version of the Michigan Rules of Evidence in effect at the time of the motion hearing.

[7] We note, it is arguable under *Barnard,* that Knight's statements could have been considered at the motion stage. While the statements were not in admissible form, if Knight were called to testify at trial, the testimony could potentially be admitted.

instances to plaintiff and plaintiff did not know if anyone else at Hayloft, such as management personnel or the owner, knew of this reputation. Plaintiff qualified this statement:

> His reputation was that he used more force than necessary. I don't mean to escalate that to the idea of an assault, but I mean, the way the bartenders talked about him is if somebody needed someone to be physical, he would do that. Which yes, if a time calls for that, I understand sometimes that happens.

Stated otherwise, plaintiff presented evidence that Matthew had a reputation among the bartenders for physically removing customers from the bar who were being ejected with more force than necessary. Unlike Knight's statements, these are the alleged statements of individuals directly employed by KKC, which could support that management was aware of Matthew's reputation. Plaintiff did qualify this statement when he explained that he did not "mean to escalate that to the idea" that Matthew had a reputation for outright assaulting patrons. However, viewed in a light most favorable to plaintiff, these statements still create a factual question whether KKC was aware that Matthew had a reputation for using more force than necessary to remove patrons.

Plaintiff presented no other evidence to support his foreseeability claim. Plaintiff stated that he never personally saw Matthew exhibit violence and made no assertion that Matthew had a criminal history. In deposition testimony, Carolan noted that Matthew "had some personal issues going on with his family, some health issues," but the existence of these personal issues alone would not support that Matthew would attack a patron. Regardless, the bartenders' statements were sufficient to overcome defendant's motion for summary disposition.

Because a genuine question of fact existed whether Matthew's conduct was in the scope of his employment and was foreseeable to KKC, the trial court properly denied defendant's motion for summary disposition on plaintiff's vicarious liability claims.

## IV. DIRECT LIABILITY FOR NEGLIGENT HIRING, SUPERVISION, AND RETENTION

Defendant also argues the trial court erred by denying its motion for summary disposition with respect to plaintiff's claim involving KKC's direct liability for negligent hiring, supervision, and retention. We disagree.

The analysis of this claim is conceptually similar to the foregoing foreseeability analysis of plaintiff's claims involving vicarious liability. See *Mueller*, 323 Mich App at 574-576. A prima facie case of negligent hiring, supervision, and retention requires a showing of duty, breach of that duty, causation, and damages. *Brown v Brown*, 478 Mich 545, 552; 739 NW2d 313 (2007). The threshold analysis is whether KKC owed plaintiff a duty as it relates to the hiring, supervision, and retention of Matthew. See *id*. Duty is "a question of whether the relationship between the actor and the injured person gives rise to any legal obligation on the actor's part for the benefit of the

injured person." *Id*. (quotation marks and citation omitted). The analysis of whether a duty exists includes but is not limited to consideration of the foreseeability of the harm to plaintiff. *Id*. at 553.[8]

In the context of negligent hiring, supervision, and retention claims, "the gravamen of negligent hiring or retention is that the employer bears some responsibility for bringing an employee into contact with a member of the public despite knowledge that doing so was likely to end poorly." *Mueller*, 323 Mich App at 574. "[A] claim of negligent hiring or retention requires actual or constructive knowledge by the employer that would make the specific wrongful conduct perpetrated by an employee predictable." *Id*. at 575.

As previously stated, although Matthew was the parking lot attendant, a duty of his job included removing unruly patrons from the bar. As such, the use of reasonable force to remove those patrons was part of his job. Despite this, Matthew received virtually zero training. Carolan testified that he did not perform a background check when he hired Matthew and the extent of his training regarding the removal of patrons was to tell him to use common sense. Accepted at face value, KKC's hiring and supervision practices may be grossly incompetent or nonexistent. This evidence paired with Matthew's alleged reputation for excessive force could support that a patron would eventually be injured fighting with Matthew or by Matthew using unnecessary roughness or aggressiveness when removing a patron from the premises. Accordingly, plaintiff established a genuine issue of fact regarding his claim of negligent hiring, supervision, and retention.

## V. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Finally, KKC argues that plaintiff failed to establish a genuine issue of fact regarding plaintiff's claim of IIED because Matthew attacked plaintiff without encouragement from defendant, plaintiff may have contributed to his damages by insulting Matthew, and plaintiff had no mental health treatment. We disagree.

Under the doctrine of respondeat superior, employers are generally not liable for torts intentionally or recklessly committed by their employees outside the scope of employment. *Zsigo v Hurley Med Ctr*, 475 Mich 215, 221; 716 NW2d 220 (2006). Plaintiff's claim of IIED was premised on Matthew's conduct during the attack. IIED, as evident from its name, is an intentional tort. *Graham v Ford*, 237 Mich App 670, 674; 604 NW2d 713 (1999). We already concluded that there is a genuine issue of fact whether KKC could be liable for Matthew's conduct against plaintiff under the theory of respondeat superior. Consequently, KKC could also be vicariously liable for plaintiff's claim of IIED premised on Matthew's attack against him.

Defendant argues that it did not directly condone or encourage Matthew to attack plaintiff. However, defendant did not need to directly encourage Matthew's conduct to be vicariously liable for it. See *Hamed*, 490 Mich at 11-12. Likewise, defendant's argument that plaintiff may have contributed to his damages by insulting Matthew is irrelevant. This would be a question for a jury if it concludes that plaintiff established a prima facie claim for IIED. Moreover, this Court is

---

[8] The other considerations relevant to the element of duty, such as the relationship between plaintiff and defendant, *Brown*, 478 Mich at 556-557, were not addressed by defendant and are not at issue in this case. Defendant focuses solely on foreseeability.

reviewing this appeal on summary disposition. What plaintiff "may have" done is a fact question for the jury.

To establish a claim for IIED, a plaintiff must establish "(1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress." *Graham*, 237 Mich App at 674. Liability is "found only where the conduct complained of has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Id*. A cause of action does not necessarily lie even when a defendant acts with tortious or criminal intent. *Roberts v Auto-Owners Ins Co*, 422 Mich 594, 602-603; 374 NW2d 905 (1985). "The test to determine whether a person's conduct was extreme and outrageous is whether recitation of the facts of the case to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!' " *Lewis v LeGrow*, 258 Mich App 175, 196; 670 NW2d 675 (2003) (quotation marks and citation omitted).

Defendant focuses only on the element of severe emotional distress, arguing that plaintiff failed to establish a genuine issue of fact because he received no mental health treatment and presented no evidence of severe distress. In *Roberts*, the Supreme Court defined severe emotional distress as follows:

> The rule stated in this Section applies only where the emotional distress has in fact resulted, and where it is severe. Emotional distress passes under various names, such as mental suffering, mental anguish, mental or nervous shock, or the like. It includes all highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea. It is only where it is extreme that the liability arises. Complete emotional tranquillity is seldom attainable in this world, and some degree of transient and trivial emotional distress is a part of the price of living among people. The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it. [*Roberts*, 422 Mich at 608-609, quoting Restatement Torts, 2d, § 46, comment j, p 77 (emphasis omitted).]

"The intensity and the duration of the distress are factors to be considered in determining its severity." *Dickerson v Nichols*, 161 Mich App 103, 107; 409 NW2d 741 (1987). The plaintiff does not need to seek medical treatment as a precondition to satisfying the element of severe emotional distress. *Haverbush v Powelson*, 217 Mich App 228, 235; 551 NW2d 206 (1996).

Plaintiff testified that the assault was "very traumatic" and he dealt with "a lot of stress and anxiety" after the attack. Plaintiff also noted feelings of shame and embarrassment. He felt heightened stress from any source of conflict as a result of the incident, and so his work as a restaurant server was more difficult. He would experience shortness of breath, panting, and tightness in his chest in triggering events. Likewise, plaintiff no longer went to Hayloft Saloon. He had since gone to other bars when a friend could accompany him. Plaintiff also stopped driving himself to events that caused him stress and anxiety. However, plaintiff did not seek therapy or mental health care for this stress and anxiety.

Plaintiff did not need to seek mental health care to establish a question of fact regarding severe emotional distress. See *Id*. at 235. Plaintiff's deposition established that he experienced stress and anxiety as a result of the attack that continued to have some impact on his daily life. He struggled with conflict in his daily life and experienced ongoing feelings of anxiety, stress, embarrassment, and shame stemming from the attack. Viewed in a light most favorable to plaintiff, this evidence demonstrated a genuine issue of material fact whether the attack caused plaintiff severe emotional distress. Accordingly, the trial court did not err by denying defendant's motion for summary disposition on plaintiff's claim of IIED.

Affirmed.

/s/ Michael F. Gadola
/s/ Christopher M. Murray
/s/ James Robert Redford